T.C. Memo. 2019-33

UNITED STATES TAX COURT

DARYL RAGSDALE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14004-16L.                    Filed April 9, 2019.

<u>Steven R. Mather</u> and <u>Lydia B. Turanchik</u>, for petitioner.

<u>Halvor R. Melom</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, <u>Judge</u>:  Petitioner commenced this collection due process

(CDP) case pursuant to section 6330(d)(1)[1] in response to a determination by the

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times.  Some monetary amounts are rounded
to the nearest dollar.

[*2] Internal Revenue Service (IRS) Office of Appeals (Appeals) to uphold a proposed levy on petitioner's property relating to his unpaid Federal income tax liabilities for the 2002, 2003, and 2012 taxable years (years at issue). The issue for decision is whether Appeals abused its discretion in sustaining the proposed collection action.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in California at the time the petition was filed with the Court.

I.      Criminal Judgment and Restitution

On November 7, 2008, petitioner pleaded guilty to one count of income tax evasion under section 7201 and one count of mail fraud under 18 U.S.C. sec. 1341 (2000). The basis for petitioner's income tax evasion conviction was that during 2002 and 2003 he (1) operated a telemarketing business and used nominees, including corporate entities that he created and controlled, to conceal from the IRS his taxable income in the form of commissions from this business, (2) used the nominee entities to pay his personal expenses directly so as to conceal his receipt of taxable income, (3) concealed his interest in one of the corporate entities by incorporating it in Nevada and using an unrelated nominee individual to serve as

[*3] corporate officer and as signatory on the bank account, and (4) failed to prepare Forms 1099-MISC, Miscellaneous Income, reporting his income from those nominee entities so that the IRS would be unaware of his income. The basis for petitioner's mail fraud conviction was that he signed and submitted a uniform residential loan application to a mortgage lender that significantly inflated his gross monthly income to ensure that he would obtain the loan. As part of his guilty plea petitioner agreed that the amount of tax loss associated with the income tax evasion count was $120,092 and that the amount of the tax loss associated with the mail fraud count was zero. He further agreed to pay restitution to the IRS of $120,092 for 2002 and 2003. He also agreed to cooperate fully with the IRS in its ascertainment, computation, and payment of his correct Federal income tax liabilities for 2002 to the present.

On August 27, 2009, the U.S. District Court for the Southern District of California filed a judgment in petitioner's criminal case in which it sentenced petitioner to three years of probation, conditioning the probation on, among other things, petitioner's paying all back tax for 2002 and 2003, including penalties and interest. The District Court also ordered petitioner to pay restitution of $120,092 to the IRS, "payable forthwith or at the rate of $200 per month."

**[*4]** II.   <u>Petitioner's Underlying Tax Liabilities for the Years at Issue</u>

Petitioner did not file a Federal income tax return and did not make any Federal tax payments for 2002. Accordingly, the IRS prepared a substitute for return for petitioner for 2002 pursuant to section 6020(b) on October 29, 2012. On August 19, 2013, the IRS assessed against petitioner for 2002 "additional tax" of $109,851, a "penalty for fraud" of $82,388, a "penalty for filing tax return after the due date" of $24,716, a "penalty for late payment of tax" of $27,463, and "interest * * * for late payment" of tax of $147,820, and notified him of these assessments.

Petitioner timely filed his 2003 Federal income tax return, reporting tax due of $985. As part of his plea, he admitted that this return was materially false in that he failed to report $28,382 in taxable income attributable to his telemarketing activities in 2003. On August 19, 2013, the IRS assessed against petitioner for 2003 "additional tax" of $6,636, a "penalty for fraud" of $7,681, a "penalty for late payment of tax" of $246, and "interest * * * for late payment" of tax of $9,330, and notified him of these assessments.

Petitioner timely filed his 2012 Federal income tax return, reporting tax due of $19,593. Petitioner did not withhold sufficient funds to pay the reported tax due and did not remit payment for this self-reported liability when he filed this

[*5] return. On September 9, 2013, the IRS assessed against him for 2012 the reported tax due, a "penalty for late payment of tax" of $331, and "interest * * * for late payment" of tax of $161, and notified him of these assessments.

III.    IRS' Collection Action

The IRS sent petitioner a Letter 1058, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, dated April 11, 2014 (levy notice). The levy notice advised him that the IRS intended to levy to collect his outstanding liabilities for the years at issue which, through the date of the levy notice, totaled $442,869, and that he had a right to appeal the proposed collection action.

In response to the levy notice petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing request). The CDP hearing request did not challenge the underlying liabilities but did request the collection alternatives of an installment agreement, an offer-in-compromise, and "I Cannot Pay Balance" and further requested that a CDP hearing be held with petitioner's authorized representative. As the reason for the CDP hearing request, the form stated:

> I request an Appeals Hearing to allow additional time to prepare,
> determine, and discuss my eligibility for an offer-in-compromise or
> an installment plan with an Appeals Officer due to the birth of my

[*6]  daughter on April 21, 2014, my need to prepare and file my 2013 tax return, my need to determine the source of funds for a suitable offer, and my ongoing work needs.

A representative from Appeals acknowledged receipt of petitioner's CDP hearing request by letter to petitioner dated May 22, 2014 (with a copy to his authorized representative at the time), and the request was assigned to Settlement Officer Theresa M. Amper (SO Amper). On June 5, 2014, SO Amper sent petitioner a letter (with a copy to his authorized representative) in which she scheduled a telephone hearing on July 8, 2014. She also indicated that the scheduled hearing was his opportunity to discuss with her the reasons he disagreed with the proposed collection action or to discuss collection alternatives. In the letter she outlined the issues she had to consider during the hearing and informed petitioner that in order for her to consider collection alternatives, such as an installment agreement or offer-in-compromise, he needed to submit to her by June 27, 2014, (1) a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals and (2) proof that "estimated tax payments are paid in full for the year to date."

On June 19, 2014, petitioner's authorized representative called SO Amper, requesting that the telephone hearing be rescheduled to August 7, 2014. SO Amper agreed to the request and by letter to petitioner (with a copy to his

[*7] authorized representative) dated June 19, 2014, she advised him of the rescheduled hearing date and requested that he provide the information she had requested in her June 5, 2014, letter on or before July 30, 2014.

In response to SO Amper's June 5, 2014, letter petitioner's authorized representative sent her a letter dated July 31, 2014, enclosing two completed Forms 433-A, one for petitioner and one for petitioner's wife, together with supporting documentation, and a copy of petitioner and his wife's prenuptial agreement (July 31, 2014, materials).

On August 6, 2014, SO Amper reviewed the July 31, 2014, materials. On the basis of her review she noted the existence of a potential community property issue. On August 7, 2014, SO Amper called petitioner's authorized representative and left him a voicemail message, informing him that the hearing scheduled for that day was canceled and that petitioner's CDP hearing request would be assigned to a senior settlement officer. Later that same day SO Amper separately spoke via telephone to petitioner and to his authorized representative. During his conversation with SO Amper petitioner's authorized representative asked her whether the IRS would accept an offer-in-compromise if there was no community property issue. SO Amper responded that she did not know; the offer-in-compromise would need to be handled by the Brookhaven IRS Centralized Offer

[*8] In Compromise Unit (IRS COIC Unit). During petitioner's conversation with SO Amper he expressed concern regarding the reassignment of his CDP hearing request to another settlement officer; all he wished to do was to settle his outstanding liabilities. SO Amper informed him that his CDP hearing request would be transferred to another settlement officer in her office and that he could still send his offer-in-compromise to her. Petitioner also expressed concern that a notice of Federal tax lien would be filed. SO Amper told him that a notice of Federal tax lien had already been filed in December 2013[2] but that no levy would occur while his CDP hearing request was pending with Appeals. Petitioner also stated to SO Amper that he did not know when and why the liabilities for the tax years at issue were assessed. SO Amper explained what the IRS records showed, including that he had agreed to the assessment of the 2002 and 2003 liabilities, and offered to send him a copy of these IRS records. Later that day she sent petitioner a letter (with a copy to his authorized representative) enclosing copies of these IRS records. She also enclosed Form 656, Offer in Compromise, and requested that he submit to her a completed Form 656 by August 25, 2014.

---

[2]Petitioner claims to not have received notification of the lien filing. This is of no consequence to this case.

[*9]   Petitioner's CDP hearing request was reassigned to Settlement Officer Deborah Cartwright (SO Cartwright), and on August 11, 2014, she sent petitioner a letter (with a copy to his authorized representative) in which she scheduled a telephone hearing on September 16, 2014.[3]  Her letter, just like SO Amper's June 5, 2014, letter, indicated that this scheduled hearing was his opportunity to discuss with her the reasons he disagreed with the proposed collection action or to discuss collection alternatives and outlined the issues that she had to consider during the hearing.  SO Cartwright also requested that petitioner "provide * * * [his] proposal to resolve * * * [his] liability."

On August 18, 2014, SO Cartwright received a completed Form 656 from petitioner in which he proposed to pay $32,161 to satisfy his Federal income tax liabilities for the years at issue and 2013, payable in monthly installments of $1,340 per month for 24 months (OIC).[4]  As the reason for the OIC petitioner checked the box on the form indicating "Doubt as to Collectibility".  He also indicated on the form that he would obtain the funds to pay for the offer from his

----

[3]When she sent this letter she was known as Deborah Conley.  Her name later changed to Deborah Cartwright during the pendency of petitioner's CDP hearing request.  For clarity we will throughout this opinion refer to her as SO Cartwright.

[4]Petitioner's 2013 liability is not at issue in this case.

**[*10]** "IRA retirement savings". On August 19, 2014, the IRS COIC Unit received Form 433-A (OIC), Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting documents, from petitioner.

By letter to petitioner (with a copy to his authorized representative) dated August 26, 2014, a representative from the IRS COIC Unit acknowledged receipt of his OIC and informed him, among other things, that he would be contacted by December 24, 2014.

On September 2, 2014, while petitioner's OIC was being considered, he and SO Cartwright spoke by telephone.[5] Petitioner asked about the September 16, 2014, telephone hearing and elected to have the hearing while then speaking to her.[6] They discussed the Appeals process with respect to petitioner's CDP hearing request (including petitioner's filing another CDP hearing request if he had issues with the lien filing) and his right to contest Appeals' determination in the Tax Court. SO Cartwright also explained the offer process to petitioner.

---

[5]Before this conversation petitioner and SO Cartwright had a telephone conversation on August 18, 2014, during which he told her that he no longer had an authorized representative.

[6]SO Cartwright's case activity notes state: "[Petitioner] asked about the hearing on 9/16, he decided to go ahead with hearing now as he filed on [sic] oic as his collection alternative."

[*11] On February 11, 2015, SO Cartwright checked on the status of petitioner's OIC; it had been sent to a unit in Sacramento, California (Sacramento Unit), because petitioner was still paying restitution.

By letter to petitioner dated March 6, 2015, a representative from the Sacramento Unit informed him that his OIC had been transferred to that unit and that it might take up to 120 days before he was contacted.

Offer Specialist B. Roldan (OS Roldan) of the Sacramento Unit was assigned to evaluate petitioner's OIC.[7] In evaluating petitioner's OIC, OS Roldan generated an Income/Expense Table (IET) and an Asset/Equity Table (AET) based upon petitioner's Form 433-A (OIC), the national and local expense standards for necessary living expenses, petitioner's 2015 Information Returns Processing Transcript Request printout, and petitioner's filed 2014 Federal income tax return. OS Roldan used the IET and the AET to calculate petitioner's ability to pay his outstanding Federal income tax liabilities for the years at issue through an installment agreement and his reasonable collection potential (RCP).

---

[7]By letter to petitioner dated May 13, 2015, the same representative from the Sacramento Unit who informed him that his OIC had been transferred to that unit informed him that his OIC had been assigned to OS Roldan. This letter also indicated that it might take up to 45 days before he was contacted.

[*12] The AET revealed that petitioner had realizable net equity in assets totaling $32,589. The IET revealed that petitioner's total monthly income and total monthly allowable living expenses were $15,775 and $8,322, respectively. The IET thus also should have revealed that the projected amount petitioner could pay to satisfy his outstanding Federal income tax liabilities for the years at issue was $663,317 (the difference between petitioner's total monthly income and total allowable expenses ($7,453) multiplied by 89 (the months remaining under the collection statute)); however, the IET erroneously indicated that the projected amount petitioner could pay was $740,658 because OS Roldan erroneously multiplied by 89 petitioner's total allowable monthly living expenses ($8,322) rather than the difference between his total monthly income and total allowable expenses ($7,453). She therefore concluded that his OIC should be rejected because he could fully pay his outstanding liabilities for the years at issue over time; the IRS records at that time indicated that petitioner owed $395,128 for the years at issue, and on the basis of the AET and the IET petitioner's RCP was $773,247 ($32,589 plus $740,658).

On May 4, 2016, OS Roldan and petitioner spoke by telephone. OS Roldan reviewed the AET and the IET with petitioner and explained that his OIC could not be recommended for acceptance because he had the ability to fully pay his

**[\*13]** outstanding liabilities for the years at issue. She also answered questions pertaining to the application of the collection statute to his case. In response petitioner stated that he could not afford to make monthly payments of $8,000 as he could barely afford to make the monthly payment amount he proposed in his OIC. OS Roldan informed him that her recommendation to reject his OIC would be forwarded to Appeals.

After reviewing the recommendation and the financial information, SO Cartwright informed petitioner by letter dated May 10, 2016, that the Sacramento Unit had made a preliminary decision to reject his OIC. She also requested that he submit to her any other offers of collection alternatives by May 24, 2016. She further informed him that "[i]f Appeals does not hear from you by May 24, 2016 a recommendation will be made based on the administrative file and a closing letter issued."

On May 20, 2016, petitioner called SO Cartwright and left a voicemail, requesting a two-week extension in order to retain legal counsel. SO Cartwright considered but ultimately denied the request. In denying the request she took into account the length of time petitioner had been aware of and working towards a resolution with Appeals; he had submitted his OIC nearly two years ago at that point and thus had had ample time to retain legal counsel. She also took into

**[\*14]** account the fact that his OIC did not offer to pay the full restitution amount ordered by the District Court, a requirement for acceptance pursuant to Internal Revenue Manual (IRM) pt. 5.8.4.23.2 (May 10, 2013). Finally, she took into account the fact that he had the ability to fully pay his outstanding liabilities for the years at issue and there were no special circumstances to deviate from that.

On May 23, 2016, SO Cartwright and petitioner spoke by telephone. During the telephone call petitioner reiterated that he would like additional time to hire a lawyer. SO Cartwright responded that she would not give him an extension of time to hire legal counsel, but she was willing to discuss the issues pertaining to his OIC at that time. In reply petitioner voiced concern that OS Roldan's ability to pay calculations were wrong because the income calculation included (1) bonuses, which were not guaranteed in the future, and (2) an individual retirement account that no longer had funds. SO Cartwright began to discuss those issues with petitioner, but he refused to continue the conversation until he hired legal counsel. She also advised him that he had the option to file another offer-in-compromise if he wished. Petitioner did not provide any other documents to SO Cartwright by the May 24, 2016, deadline. She then proceeded to prepare a Letter 3193, Notice of Determination Concerning Collection Action(s) Under Section 6230 and/or Section 6330 (notice of determination).

**[*15]** There having been no further response from petitioner, on June 2, 2016, Appeals issued the notice of determination to him; the notice of determination rejected his OIC and sustained the proposed levy for the years at issue. A summary detailing the matters considered by Appeals and its conclusions was attached to the notice of determination and included the following explanations:

## BRIEF BACKGROUND

\*       \*       \*       \*       \*       \*       \*

Appeals received the offer back on May 10, 2016 with the recommendation to reject the offer as the financial information indicated the taxpayer could full pay the liability. I reviewed the offer rejection recommendation and the financial information and rejection of the offer appears to be correct as the financial information indicates that more could be paid than offered.

I mailed the taxpayer a letter dated May 10, 206 [sic] requesting a collection alternative or any questions. A response was due to Appeals by May 24, 2016.

The Taxpayer called on May 20, 2016 and requested a two week extension in order to retain counsel and get legal advice on the case. I considered the request and considered several issues that were pertinent. The first issue was the length of time the taxpayer was aware of and working toward a resolution with Appeals. The taxpayer filed the OIC in August of 2014, (nearly two years ago,) [sic] as the alternative to the collection action of the filing of the NFTL. During this time the taxpayer had ample time to retain counsel. Given the deadline of May 24, 2014 [sic] the taxpayer also had sufficient time to retain counsel; the deadline did not prevent them from doing so therefore I decided not to extend the deadline for another two weeks, as this appeared to be simply a delay tactic.

**[*16]** Another issued I considered was that the OIC did not offer to pay the restitution amount that was the result of conviction for tax fraud which is a requirement per IRM 5.8.4.23.2 (05-10-2013). Based on this IRM the service is prohibited from accepting an OIC that fails to offer full payment of the restitution. The taxpayer owes over $120,000 in restitution and the OIC was for $32,161. The two week extension requested by the taxpayer would not have influenced this basic flaw in the taxpayer's OIC request.

The third issue I considered in deciding not to allow the taxpayer another two weeks extension of the May 24 deadline was the evaluation provided by compliance indicated the taxpayer has the assets and income sufficient to full pay the liability which also makes them ineligible for OIC consideration unless special circumstances exists. No special circumstances were ever listed or provided. The taxpayer was provided the May 24, 2014 [sic] deadline to give some other alternative to the OIC so I could consider the merits of any new proposals. Had the taxpayer provided some alternative and asked for additional time to perfect the request, my decision to provide them additional time very well may have been different.

The taxpayer was advised that no extension was being given and the requirements for them to provide alternatives other than the OIC by May 24, 2016 still stood.

## LEGAL AND ADMINISTRATIVE REVIEW

I, Deborah J Cartwright, verified the requirements of any applicable law or administrative procedure were met. IRS records confirmed the proper issuance of the notice and demand, Notice of Intent to Levy and/or Notice of Federal Tax Lien (NFTL) filing, and notice of a right to a Collection Due Process (CDP) hearing.

\*          \*          \*          \*          \*          \*          \*

**[*17]** <u>**ISSUES YOU RAISED**</u>

The Form 12153 requested an installment agreement, offer in compromise and can't pay as collection alternatives.

<u>**Appeals analysis of the Issues Raised**</u>

**Installment Agreement**: The taxpayer was given an opportunity to provide details of his installment agreement proposal but he didn't provide any specific details of his proposal.

**Can't pay**: The financial information provided does not support a recommendation of currently non collectible.

**Offer in Compromise**: The taxpayer submitted an offer in compromise that was considered by an offer specialist and their recommendation was that the taxpayer had the ability to full pay the balance due. The Income/Expense and Asset/Equity tables are attached to this document.

I sent the taxpayer a letter dated May 10, 2016, requesting a collection alternative or questions. The taxpayer contacted Appeals on May 20, 2016 and left a voice mail message. I contacted the taxpayer on May 23, 2016 and he requested a two week extension in order to seek legal advice. Appeals did not agree to the extension as it appeared to be solely a request to delay collection. I was prepared to discuss the taxpayer's issues but the taxpayer did not want to proceed.

<u>**Collection Alternatives Requested**</u>
You offered no viable alternatives to collection.

<u>**Challenges to the Liability**</u>
You did not dispute your liability.

**You raised no other issues.**

**[\*18]**                                   <u>**BALANCING ANALYSIS**</u>

> I balanced the competing interests when finding the Notice of Intent
> to Levy is appropriate.  The taxpayer did not offer any viable
> collection alternatives during the CDP hearing process.  Given the
> taxpayer's failure to propose any viable collection alternatives the
> Notice of Intent to Levy balances the need for efficient collection of
> taxes with the taxpayer's legitimate concern that any collection action
> be no more intrusive than necessary[.]

On June 17, 2016, petitioner timely filed a petition with this Court for

review of the notice of determination.

OPINION

I.     <u>General Legal Principles</u>

A.     <u>CDP Review Procedure for a Proposed Levy</u>

Under section 6331(a), if any person liable to pay any tax neglects or

refuses to do so after notice and demand, the Commissioner is authorized to

collect the unpaid amount by way of a levy upon all property and rights to

property belonging to such person or upon which there is a lien.  Pursuant to

section 6330(a), the Commissioner must provide the person with written notice of

an opportunity for an administrative hearing to review the proposed levy.

If an administrative hearing is requested in a levy case, the hearing is to be

conducted by Appeals.  Sec. 6330(b)(1).  At the hearing the Appeals officer

conducting it must obtain verification that the requirements of applicable law and

[*19] administrative procedure have been met.  Sec. 6330(c)(1).  The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax or the proposed collection action, including spousal defenses, challenges to the appropriateness of the proposed collection action, and collection alternatives such as an offer-in-compromise.  Sec. 6330(c)(2)(A).  Following the hearing the Appeals officer must determine among other things whether the proposed collection action is appropriate.  In reaching the determination the Appeals officer must take into consideration:  (1) whether the requirements of applicable law and administrative procedure have been met; (2) all relevant issues raised by the taxpayer, including offers of collection alternatives such as an offer-in-compromise; and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that collection be no more intrusive than necessary.  Sec. 6330(c)(3); see also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

B.  Standard of Review

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by Appeals in a CDP case.  If the taxpayer files a timely petition for such judicial review, the applicable standard of review depends on whether the underlying tax liability is at issue.  Where the taxpayer's underlying tax liability is

[*20] properly at issue, the Court reviews the liability determination de novo.

Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews

administrative determinations made by Appeals regarding nonliability issues for

abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2002).

Although in his petition filed with the Court petitioner appears to challenge

his underlying tax liabilities for the years at issue, he never raised the issue of his

underlying liabilities before Appeals. Our review of Appeals' determination under

section 6330(c)(3) is limited to the issues that a taxpayer raises before Appeals.

Giamelli v. Commissioner, 129 T.C. 107, 114-115 (2007); see also sec.

301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. But see Hoyle v.

Commissioner, 131 T.C. 197, 202-203 (2008) (holding that the Court may,

however, review whether an Appeals officer met the verification requirements

prescribed in section 6330(c)(1) without regard to whether the taxpayer advanced

that issue at the CDP hearing), supplemented by 136 T.C. 463 (2011). Thus,

petitioner's underlying liabilities for the years at issue are not properly before the

Court, and we will review Appeals' determination sustaining the proposed levy for

abuse of discretion; that is, whether the determination was arbitrary, capricious, or

[*21] without sound basis in fact or law.[8]  See Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182.  We do not conduct an independent review and substitute our own judgment for that of Appeals. Murphy v. Commissioner, 125 T.C. at 320.

C.     Scope of Review

In nonliability CDP cases that are appealable to the U.S. Court of Appeals for the Ninth Circuit such as this case, see sec. 7482(b)(1)(G)(I), the scope of our review is generally limited to the administrative record, see Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009) (adopting Robinette v. Commissioner, 439 F.3d 455, 459-460 (8th Cir. 2006), rev'g 123 T.C. 85 (2004)), aff'g in part as to this issue T.C. Memo. 2006-166 and aff'g in part, vacating in part decisions in related cases.  This is known as the "administrative record" rule. Section 301.6330-1(f)(2), Q&A-F4, Proced. & Admin. Regs., defines the administrative record as Appeals' case file, including "any * * * documents or materials relied upon by the Appeals officer * * * in making the determination under section 6330(c)(3)".

---

[8]Even if petitioner's underlying liabilities for the years at issue were properly before this Court, he conceded on the record at trial that he did not challenge his underlying liabilities.

**[\*22]** Petitioner acknowledges that <u>Keller</u> is applicable here. Nevertheless, he contends that the Court should have admitted into evidence several exhibits (Exhibits 41-P through 44-P) for purposes of supplementing, clarifying, and completing the administrative record. The Court of Appeals has crafted four "narrow" exceptions to the administrative record rule. Those exceptions are: "(1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" <u>Lands Council v. Powell</u>, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting <u>Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.</u>, 100 F.3d 1443, 1450 (9th Cir. 1996)); <u>see also</u> <u>Meyer v. Commissioner</u>, T.C. Memo. 2013-268, at \*12 n.9 (recognizing these exceptions in the context of review under section 6330(d)(1)). Petitioner has failed to show how the excluded exhibits fall within any of these narrowly construed exceptions; the evidence is therefore unnecessary and inappropriate for this case.

## II. <u>Analysis</u>

The record shows that SO Cartwright verified that the applicable legal and administrative procedural requirements were met, and petitioner does not contend

**[\*23]** that SO Cartwright failed to balance the need for efficient tax administration with the intrusiveness of collection for him. Petitioner does contend, however, that Appeals' determination to reject his OIC and sustain the proposed levy was an abuse of discretion because (1) he was not afforded a CDP hearing and the opportunity to provide input during the administrative process after he submitted his CDP hearing request and (2) blatant errors were committed in evaluating and ultimately rejecting his OIC. We address each contention in turn.

A. CDP Hearing

Petitioner contends that no CDP hearing took place. CDP hearings have historically been conducted informally. Davis v. Commissioner, 115 T.C. 35, 41 (2000). To that end, "[t]he formal hearing procedures required under the Administrative Procedure Act, 5 U.S.C. 551 et seq., do not apply to CDP hearings * * *. A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof." Sec. 301.6330-1(d)(2), A-D6, Proced. & Admin. Regs.

The administrative record reflects that SO Amper, SO Cartwright, and OS Roldan discussed petitioner's CDP hearing request with him or his authorized representative by telephone on several occasions. In particular on September 2,

**[*24]** 2014, petitioner and SO Cartwright spoke by telephone, and during this call petitioner agreed to "go ahead with [the] hearing now" instead of waiting for the CDP telephone hearing that SO Cartwright had scheduled for September 16, 2014. In addition, on May 4, 2016, petitioner and OS Roldan had a telephone, conversation during which OS Roldan explained her recommendation to reject his OIC. Then on May 23, 2016, after receiving OS Roldan's recommendation, reviewing it and the financial information, and informing petitioner of the preliminary decision by letter dated May 10, 2016, petitioner and SO Cartwright had a telephone conversation during which SO Cartwright attempted to discuss the issues pertaining to his OIC. These oral communications collectively constitute petitioner's CDP hearing. Accordingly, petitioner's contention that no CDP hearing occurred here is without merit.

Petitioner further contends that he was not afforded a "fair hearing" because he did not have the opportunity to provide input during the CDP process, particularly with respect to the evaluation of his OIC. Section 6330 provides that upon written request a taxpayer has a right to a "[f]air [h]earing", which consists of the following four elements: (1) an impartial officer will conduct the hearing; (2) that officer will verify that the requirements of applicable law and administrative procedure have been met; (3) certain issues may be heard, such as

**[*25]** offers of collection alternatives; and (4) a challenge to the underlying tax liability may be raised only if the taxpayer did not receive a notice of deficiency with respect to the liability or did not otherwise have an earlier opportunity to dispute the liability.  See sec. 6330(b) and (c); Vossbrinck v. Commissioner, T.C. Memo. 2002-96.

The administrative record shows that multiple packages of documents were submitted to Appeals by petitioner or on his behalf during the CDP process, and he (and/or his authorized representative) had several telephone conversations with IRS representatives (i.e., SO Amper, OS Roldan, and SO Cartwright) regarding these documents.  Indeed, petitioner's final telephone conversation regarding his CDP hearing request was with SO Cartwright on May 23, 2016.  During this conversation she attempted to discuss the issues pertaining to his OIC, including his ability to fully pay his outstanding liabilities for the years at issue, but he refused.  Instead, he insisted on an extension of time to hire legal counsel.[9]

---

[9]Petitioner complains that SO Cartwright refused a reasonable request for a short extension of time.  SO Cartwright denied petitioner's request for a two-week extension of time for three reasons:  (1) petitioner could have retained legal counsel while his OIC was under consideration, (2) hiring legal counsel would not have changed the fact that his OIC did not meet the restitution requirements under IRM pt 5.8.4.23.2 (May 10, 2013), and (3) petitioner had the ability to fully pay his outstanding liabilities for the years at issue.  The administrative record shows that petitioner had an authorized representative at the outset of the CDP process

(continued...)

[*26] Accordingly, contrary to petitioner's contention, he was offered the opportunity to provide "input" during the CDP process and in fact provided input. The consideration of petitioner's CDP hearing request satisfied the elements of a fair hearing under section 6330.

### B. Rejection of the OIC

Section 7122(a) authorizes the Commissioner to compromise a taxpayer's Federal income tax liability. Pursuant to section 7122(d), the Commissioner has prescribed guidelines for evaluating whether an offer-in-compromise is adequate and should be accepted. See sec. 301.7122-1(b), Proced. & Admin. Regs. Under these guidelines there are three grounds for compromise: (1) doubt as to liability,

---

[9](...continued)
but dismissed that representative during the process. Furthermore, petitioner discussed OS Roldan's recommendation to reject his OIC with OS Roldan six days before SO Cartwright's May 10, 2016, letter informing him of the preliminary decision to reject his OIC; he could have sought legal counsel during that time. He also had an additional 14 days from the date of the May 10, 2016, letter to the May 24, 2016, deadline SO Cartwright gave him before closing the case in which he could have sought legal counsel. This Court has consistently held that Appeals is not required to negotiate indefinitely or wait any specific amount of time before issuing a notice of determination. See, e.g., Gazi v. Commissioner, T.C. Memo. 2007-342, slip op. at 19 ("There is no requirement that the Commissioner wait a certain amount of time before making a determination as to a proposed levy."); Clawson v. Commissioner, T.C. Memo. 2004-106, slip op. at 17 ("[T]here is neither requirement nor reason that the Appeals officer wait a certain amount of time before rendering his determination[.]"); see also sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs. The denial of petitioner's extension request was reasonable under the circumstances; petitioner's complaint is overblown.

**[\*27]** (2) doubt as to collectibility, and (3) promotion of effective tax administration. Id. On his OIC petitioner asserted that he was seeking to compromise his outstanding liabilities for the years at issue on the grounds of doubt as to collectibility.

Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the liability. Id. subpara. (2). Generally, under the IRS' administrative pronouncements, an offer-in-compromise on the grounds of doubt as to collectibility will be acceptable only where (1) it is unlikely that the liability can be collected in full and (2) the offer reflects the taxpayer's total RCP (i.e., the amount that the IRS could collect through other means, including administrative and judicial collection remedies). Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517; IRM pt. 8.23.3.1(4) (Oct. 15, 2014). In some cases the IRS may accept an offer of less than the total RCP if there are special circumstances. Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. at 517; IRM pt. 5.8.4.2 (May 10, 2013). Petitioner does not contend that special circumstances exist.

"The decision to entertain, accept or reject an offer in compromise is squarely within the discretion of the appeals officer and the IRS in general." Kindred v. Commissioner, 454 F.3d 688, 696 (7th Cir. 2006). As noted supra

**[\*28]** p. 21, we do not substitute our judgment for that of Appeals and decide whether in our opinion petitioner's OIC should have been accepted (or what would be an acceptable alternative). Murphy v. Commissioner, 125 T.C. at 320; Ramdas v. Commissioner, T.C. Memo. 2013-104, at \*23. If Appeals follows all statutory and administrative guidelines and provides a reasoned, balanced decision, we will not reweigh the equities. Thompson v. Commissioner, 140 T.C. 173, 179 (2013).

In support of his position that blatant errors were made in evaluating and ultimately rejecting his OIC, petitioner asserts that (1) OS Roldan incorrectly analyzed his ability to pay as reflected in the financial information he submitted to Appeals and, accordingly, his total RCP and (2) SO Cartwright incorrectly determined that his OIC must provide for full payment of his criminal restitution amount.

       1.     Ability to Pay and RCP

This Court has generally held that there is no abuse of discretion when an Appeals officer relies on guidelines published in the IRM to evaluate a proposed collection alternative, such as an offer-in-compromise. See, e.g., Orum v. Commissioner, 123 T.C. 1, 13-14 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Tillery v. Commissioner, T.C. Memo. 2015-170, at \*15; Arede v. Commissioner,

**[*29]** T.C. Memo. 2014-29, at *12; <u>Aldridge v. Commissioner</u>, T.C. Memo. 2009-276, slip op. at 11-12. When a collection alternative is at issue, IRM pt. 8.22.4.2.1(4) (Nov. 5, 2013) directs an Appeals officer to the appropriate IRM sections containing the administrative policies and procedures relating to that alternative; as relevant here, IRM pt. 5.8 (June 24, 2013) governs offer-in-compromise acceptance and rejection determinations and IRM pt. 5.15.1 (Oct. 2, 2012) (Financial Analysis Handbook) provides instructions for securing, verifying, and analyzing financial information of a taxpayer for purposes of determining a taxpayer's ability to pay his outstanding tax liabilities.

IRM pt. 5.8.4.3(2) (May 10, 2013) states that "the decision to accept or reject [an offer-in-compromise on the grounds of doubt as to collectibility] usually rests on whether the amount offered reflects the reasonable collection potential (RCP)." "RCP is generally calculated by multiplying a taxpayer's monthly income available to pay taxes by the number of months remaining in the statutory period for collection, <u>see</u> sec. 6502, and adding to that product the realizable net equity in the taxpayer's assets." <u>Ramdas v. Commissioner</u>, at *25. Additionally, IRM pt. 5.8.4.3(3) prescribes that, absent special circumstances, an offer-in-compromise on the grounds of doubt as to collectibility should not be accepted where the outstanding liability can be paid in full as a lump sum or under current installment

**[*30]** agreement guidelines. Under installment agreement guidelines, an installment agreement must reflect the taxpayer's ability to pay on a monthly basis throughout the duration of the agreement, and the primary source of information an Appeals officer is to consider in accepting or rejecting a proposed agreement is the financial information provided by the taxpayer on a collection information statement (i.e., a Form 433-A), along with supporting documentation. IRM pt. 5.14.1.4 (Sept. 19, 2014). Likewise, IRM 5.8.5.3.1(1) (Sept. 30, 2013) advises an Appeals officer that a thorough verification of the taxpayer's Form 433-A "involves reviewing taxpayer submitted documentation and information available from internal sources" and that "[a]s a general rule, additional documentation should not be requested when the information is readily available from internal sources or it would not change the recommendation." The Financial Analysis Handbook directs an Appeals officer to "[a]nalyze the income and expenses [reflected on Form 433-A] to determine the amount of disposable income (gross income less all allowable expenses) available to apply to the tax liability." IRM pt. 5.15.1.2(1) (Nov. 17, 2014).

IRM pt. 5.8.5.20 (Sept. 30, 2013) instructs an Appeals officer to use the taxpayer's current income to calculate future income unless there are facts and circumstances that may warrant placing a different value. According to the

**[\*31]** Financial Analysis Handbook, allowable expenses "include those expenses that * * * <u>are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income</u>" or otherwise allowable "based on the circumstances of an individual case". IRM pt. 5.15.1.7(1) (Oct. 2, 2012). An Appeals officer is advised to use the national and local expense standards as guidelines for allowable living expenses (and not simply rely on the living expenses reported on a taxpayer's Form 433-A). IRM pt. 5.15.1.1(6) and (7) (Nov. 17, 2014); IRM pt. 5.15.1.7(2); <u>see also</u> <u>Perrin v. Commissioner</u>, T.C. Memo. 2012-22, slip op. at 7-8 ("The use of local and national standards is expressly authorized by Congress and does not constitute an abuse of discretion even if it forces a taxpayer * * * to change his lifestyle."); <u>Aldridge v. Commissioner</u>, slip op. at 14 ("The taxpayer has the burden of providing information * * * to justify a departure from the local standards." (citing <u>Lindley v. Commissioner</u>, T.C. Memo. 2006-229, <u>aff'd in part sub nom.</u> <u>Keller v. Commissioner</u>, 568 F.3d 710)).

On the basis of the foregoing, OS Roldan generated an IET and an AET, determining petitioner's ability to pay his outstanding liabilities for the years at issue through an installment agreement and his RCP. OS Roldan determined petitioner's ability to pay to be $740,658 and his realizable net equity in assets to

[*32] be $32,589.  OS Roldan therefore determined petitioner's RCP to be $773,247 ($740,658 plus $32,589).  Consequently, she concluded that petitioner's OIC should be rejected because (1) petitioner had the ability to fully pay his outstanding liabilities for the years at issue through an installment agreement and (2) his RCP exceeded the offer.  Although, as we discuss below, one of OS Roldan's calculations contained an error, we find no fault in her overarching conclusion.  See Ramdas v. Commissioner, at *25 ("An Appeals Officer does not abuse his discretion when he rejects an OIC because the taxpayer's ability to pay is greater than the amount he proposes to pay under the compromise proposal." (citing Fargo v. Commissioner, 447 F.3d 706, 709-710 (9th Cir. 2006), aff'g T.C. Memo. 2004-13)).  Any suggestion by petitioner that OS Roldan should have reached a different conclusion on the basis of the financial information submitted is without merit.

Petitioner asserts that OS Roldan's ability to pay calculation was incorrect, resulting in a flawed recommendation.  To be sure, she erroneously calculated the amount he could pay over time (and ultimately his RCP) by using his monthly allowable expenses ($8,322) instead of the difference between his monthly income and his monthly allowable expenses ($7,453).  However, we agree with respondent that this calculation error was harmless.  We have previously found

[*33] that errors calculating RCP do not amount to abuse of discretion when the taxpayer's offer was less than the correctly calculated RCP. See, e.g., Titsworth v. Commissioner, T.C. Memo. 2012-12, slip op. at 22-23 (and cases cited threat); see also Leshin v. Commissioner, 436 F. App'x 791 (9th Cir. 2011) (finding that Appeals' mistakes when calculating taxpayers' necessary living expenses "were harmless because the Commissioner of Internal Revenue corrected the mistakes in the Tax Court and showed that, with the corrections, the * * * offer was still far below their reasonable collection potential."), aff'g T.C. Memo. 2008-281. Here even when OS Roldan's error is corrected, petitioner's RCP still well exceeds his OIC of $32,161.[10] His OIC accordingly warranted rejection on this basis.

2. Restitution

Petitioner also contends that his restitution obligation is irrelevant to his OIC and that therefore SO Cartwright erred in determining that his OIC was not acceptable because it did not provide for full payment of that obligation. The IRS guidelines, however, are clear: When a taxpayer seeks to compromise taxes, penalties, and interest for the same tax periods for which restitution was ordered, the offer must provide for full payment of the restitution amount and cannot modify or be inconsistent with the restitution order. IRM pt. 5.1.5.18.6 (Dec. 16,

_____

[10]Petitioner's RCP, as corrected, is $695,906.

[*34] 2014); IRM pt. 5.8.4.23.2. By his OIC petitioner sought to compromise his liabilities for the years covered by the criminal restitution the District Court ordered him to pay. His OIC did not provide for full payment of this restitution. Petitioner's OIC accordingly warranted rejection on this basis as well. See Rebuck v. Commissioner, T.C. Memo. 2016-3, at *14-*15 (rejecting an offer-in-compromise that fails to provide for full payment of criminal restitution is not an abuse of discretion).

C.    Other Offers of Collection Alternatives

In addition to requesting an offer-in-compromise, petitioner also indicated in his CDP hearing request that he was requesting an installment agreement and "I Cannot Pay Balance". The administrative record shows that he did not pursue an installment agreement beyond his initial CDP hearing request. It is not an abuse of discretion for an Appeals officer to sustain a proposed collection action and not consider collection alternatives when the taxpayer has proposed none. Kendricks v. Commissioner, 124 T.C. 69, 79 (2005); O'Neil v. Commissioner, T.C. Memo. 2009-183 (finding that the taxpayer discussed an offer-in-compromise with settlement officer on multiple occasions but failed to submit one in writing); see also sec. 301.7122-1(d)(1), Proced. & Admin. Regs. (requiring that offer must be made in writing and must contain all the information requested by the IRS). As far

[*35] as petitioner's not being able to pay his balance (and thus presumably seeking for his accounts for the years at issue to be placed in currently not collectible status), as we have discussed supra, petitioner had the ability to pay his outstanding liabilities for the years at issue. Accordingly, it was appropriate for SO Cartwright to conclude, as the notice of determination reflects, that petitioner was not eligible for either collection alternative.

III.    Conclusion

In the light of the above, the Court finds that Appeals did not abuse its discretion in rejecting petitioner's OIC and sustaining the proposed levy for the years at issue. The administrative record shows that SO Cartwright: (1) verified that all legal and procedural requirements had been met, (2) considered all issues petitioner raised, and (3) determined that the proposed collection action appropriately balanced the need for the efficient collection of taxes with the legitimate concern of petitioner that the collection action be no more intrusive than necessary. Petitioner is of course free to continue to negotiate with the IRS concerning his liabilities for the years at issue, but he is entitled to only one CDP hearing and Tax Court proceeding with respect to the proposed levy. See Perrin v. Commissioner, slip op. at 8.

**[*36]** We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or meritless.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.