# United States Tax Court

T.C. Memo. 2025-54

DANIEL PALLI,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 4841-23L.                           Filed June 2, 2025.

_____

*Shawn M. Nichols*, for petitioner.

*Rae L. Ensor* and *Joline M. Wang*, for respondent.


## MEMORANDUM OPINION

JENKINS, *Judge*: In this collection due process (CDP) case petitioner, Daniel Palli, timely filed a Petition under section 6330(d)(1),[1] requesting that this Court review a Notice of Determination Concerning Collection Actions Under IRS Sections 6320 or 6330 of the Internal Revenue Code with respect to petitioner's liability for his 2016 tax year (Initial NOD).[2] The Initial NOD sustains a proposed levy and rejects petitioner's proposed offer-in-compromise (OIC). The Initial NOD was followed by a supplemental Notice of Determination Concerning Collection Actions Under IRS Sections 6320 or 6330 of the Internal Revenue Code (Supplemental NOD), similarly rejecting petitioner's proposed OIC. The Supplemental NOD was issued to petitioner

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2] Petitioner resided in South Dakota when the Petition was filed.

[*2] following a supplemental CDP hearing with the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals).

Respondent filed a Motion for Summary Judgment (Motion) pursuant to Rule 121, contending that there are no genuine issues of material fact and that it was not an abuse of discretion for Appeals to reject petitioner's OIC and sustain the levy. Petitioner filed a Response to the Motion (Response), arguing that there are disputes of material fact and that Appeals abused its discretion. This Court finds that this case is appropriate for summary adjudication and that Appeals did not abuse its discretion in issuing the Supplemental NOD, rejecting petitioner's OIC and sustaining the levy. This Court will thus grant the Motion.

*Background*

The following facts are based on the parties' pleadings, the Motion and Response papers, and the Stipulation as to the Administrative Record, including the Exhibits attached thereto. *See* Rules 93, 121(c). The facts are stated solely for the purpose of ruling on the Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

I.    *Underlying Liability and Pre-CDP Hearing Payments*

Petitioner timely filed his tax return for the 2016 tax year reporting a tax liability of $401,279. Petitioner paid $15,000 in connection with filing the return, but the balance remained unpaid. On November 20, 2017, the IRS assessed the tax liability reported on petitioner's return, as well as a $9,592 addition to tax for failure to make estimated tax payments, a $16,051 addition to tax for failure to timely pay, and $9,747 of interest. On November 27, 2017, the IRS abated $75 of the addition to tax for failure to timely pay.

As of March 27, 2018, a request for an installment agreement for petitioner's 2016 tax liability was pending, and the installment agreement was granted on August 8, 2018. A payment of $84,686 was made and a credit of $105,673 applied in 2018. The installment agreement terminated on March 15, 2021.

II.   *Collections Review and Initial CDP Hearing*

On August 16, 2021, the IRS sent petitioner Notice LT11, Notice of Intent to Levy and Your Collection Due Process Right to a Hearing,

[*3] notifying him of a proposed levy for the 2016 tax year. In response, petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, dated September 14, 2021, checking the boxes for "Installment Agreement," "Offer in Compromise," and "I Cannot Pay Balance." The Form 12153 further explained that petitioner had an installment agreement but could not make payments and was interested in an OIC. The Form 12153 did not indicate a dispute with the underlying tax liability.

On October 5, 2021, petitioner mailed Form 656, Offer in Compromise (Offer), to the IRS's Centralized Offer in Compromise (COIC) Unit. The Offer indicated that it was being submitted on grounds of doubt as to collectibility and that petitioner offered a total of $177,348, to be paid in five installments of $35,470, with the initial installment payment included with the Offer. Additional payments of $35,470 were made on or around December 8, 2021, and January 3, 2022. All payments were credited toward petitioner's balance due for the 2016 tax year. The Offer submission included Form 433–A, Collection Information Statement, which indicated that petitioner had two checking accounts, an individual retirement account, two vehicles, a note receivable, and an interest in an entity that was a source of income for petitioner. Petitioner's Offer was assigned to a COIC revenue officer (RO), who first contacted petitioner's representative on April 19, 2022. The representative submitted information in response to requests from the RO on May 6 and 16, 2022.

Meanwhile, petitioner's request for a CDP hearing was assigned to an Appeals officer (First AO), who verified that she had no prior involvement with petitioner for the types of taxes and the tax year involved in the case and conducted her initial analysis of the case. On May 17, 2022, the First AO sent petitioner a letter acknowledging receipt of the CDP hearing request and scheduling a telephone conference for June 22, 2022. The letter explained that petitioner would have an opportunity to comment on the COIC Unit's analysis concerning petitioner's Offer before a final determination was made.

Petitioner and the representative did not participate in the telephone conference with the First AO on the scheduled date. The First AO promptly sent another letter, dated June 23, 2022, requesting a call within 14 days. On June 24, 2022, the representative indicated in a telephone call with the First AO that petitioner still wanted his Offer considered but that he was no longer pursuing the CDP hearing. On the same day, the First AO faxed to the representative Form 12256,

[*4] Withdrawal of Request for Collection Due Process or Equivalent Hearing, but it was never returned. Instead, on July 13, 2022, the representative sent a fax to the First AO indicating that petitioner had no additional information to provide while the Offer was pending but that petitioner was interested in discussing other collection alternatives and penalty relief if the Offer was rejected.

Meanwhile, in response to a request from the RO, on July 18, 2022, the representative submitted additional documents, including tax documents and profit and loss statements for petitioner's business, personal and business bank account statements, individual retirement account statements, and proof of payments for living expenses. On August 1, 2022, in response to a request from the RO, the representative faxed confirmation that petitioner had paid his 2021 income tax liability, as well as additional bank account statements and information about the amount and source of petitioner's income.

Using the information petitioner provided, the RO determined that petitioner's monthly gross income was $3,200 and applying that amount (net of allowed expenses) over 77 months resulted in a payment from future income of $80,184. On the basis of the future income calculation, along with a determined net equity in assets of $166,578, the RO determined that the amount that petitioner could pay was $246,762. The RO assumed a total outstanding liability for the 2016 tax year of $229,895. The RO determined that petitioner's total liability was below the amount that he could pay and therefore concluded that she could not recommend accepting petitioner's Offer. On August 8, 2022, the RO conveyed the decision to reject petitioner's Offer to the representative by telephone and by fax. The RO's notes indicate that she told the representative on the phone that she had determined petitioner's reasonable collection potential (RCP).

Later on August 8, 2022, the representative faxed the RO a letter raising concerns about the RO's including the $43,560 cash balance of a business bank account in petitioner's asset calculation and using a $3,200 monthly gross income amount for the future income calculation. The letter explained that the cash in the business bank account consisted of insurance proceeds related to property damage and that repairs had not yet been completed; accordingly, the letter suggested, petitioner's net equity in assets should be adjusted downward by the $43,560 balance in the account. The fax included documentation of insurance checks that were deposited to the account in June 2022, before the month-end balance used by the RO, as well as information about the

[*5] storm and the insurance claim, but did not include any information about subsequent use of the funds or subsequent bank statements showing the funds being used. The representative's letter also argued that the future income calculation should be revised. The representative explained that petitioner had increased the $10 per hour that he "was paying himself" to $20 in the middle of 2022 in order to make his wage match that of the company's lowest paid employee but that petitioner had ceased taking wages because his business was "not in a great cash position." Accordingly, the letter argued that the total $8,800 in wages that petitioner had drawn during the year should be averaged across the year. The fax included a payroll report through July 1, 2022, but nothing reflecting pay thereafter. The letter did not say anything about the use of 77 months for computing the payment from future income.

After reviewing the representative's letter, the RO determined that the bank account balance would not be excluded from petitioner's asset calculation until repairs were completed and the balance accordingly depleted. She also determined that it was not appropriate to average the wages; instead, the RO maintained use of $3,200, determined on the basis of the most recently reported wages, leaving open the possibility that petitioner could provide proof of the lower wages to Appeals. The RO conveyed as much to the representative in a telephone call on August 9, 2022. On August 10, 2022, the IRS mailed petitioner a letter explaining that the COIC Unit had made a preliminary decision to reject his Offer because he could pay in full but that a final determination would be made by Appeals in connection with his CDP case. That letter did not refer to petitioner's RCP.

On November 8, 2022, the First AO, having received the Offer file from the COIC Unit, left the representative a voicemail indicating that she was making contact about the COIC Unit's rejection and an installment agreement. On January 20, 2023, having received no response from the representative, the First AO determined that she would sustain the levy. The Initial NOD was issued on March 7, 2023.

III. *Initial NOD*

The Initial NOD reflects the determination not to grant petitioner relief because he failed to propose an acceptable alternative resolution. It explains that his Offer was rejected because the IRS had determined that he could pay his liability in full within the time provided by law. It further explains that Appeals sustained the rejection of the Offer

[*6] because the tax was legally due and an amount larger than the Offer amount appeared to be collectible.

The Appeals Case Memorandum attached to the Initial NOD explains that the First AO reviewed the information in the COIC Unit file and that petitioner had not presented any information to dispute the appropriateness of the collection action. Accordingly, the memorandum explains, Appeals sustained the levy proposed by the COIC Unit, finding it no more intrusive than necessary.

IV.    *Petition and Remand*

The Petition argues that the IRS should have accepted petitioner's Offer. It suggests that the IRS proceeded inappropriately slowly in considering the Offer by first requesting information in mid-2022 after the Offer was submitted in October of 2021. It also alleges that the Initial NOD ignores the information submitted by the representative during the summer of 2022 and therefore imputes income incorrectly and improperly allocates insurance proceeds. And the Petition suggests that the representative's failure to revert to the First AO was appropriate because "[t]he November 8, 2022 message from the IRS agent requested a payment plan and was not in relation to appeal of the offer in compromise."

Respondent filed a Motion to Remand. In it, respondent stated that the COIC RO's analysis underlying the Initial NOD compared petitioner's RCP to his liability after application of the two payments he had made pursuant to his Offer, after it was submitted, rather than to his liability at the time the Offer was submitted. Respondent further stated that petitioner's RCP as determined by the RO was, in fact, less than his liability at the time the Offer was submitted, making ability to pay an incorrect basis on which to reject the Offer. Accordingly, respondent requested that the Court remand the case to Appeals for reconsideration of petitioner's Offer. Petitioner indicated that he did not oppose or object to respondent's Motion to Remand, and, accordingly, the Court granted it on January 31, 2024, leading to the supplemental CDP hearing. In a memo to Appeals, respondent's counsel explained the history of the case and instructed Appeals to determine whether petitioner's Offer should have been accepted and to permit petitioner to submit a new OIC with updated financial information.

**[\*7]** V.     *Supplemental CDP Hearing*

On February 9, 2024, petitioner's case was reassigned to a new Appeals officer (Second AO), who confirmed that she had no prior involvement with petitioner for the types of taxes and tax years at issue. She reviewed the case, determined that the unpaid balance at that time was $122,934.20, and determined that petitioner's unpaid balance when the Offer was submitted was $230,958.80. The Second AO's notes indicate that although the COIC RO's preliminary determination had set forth a slightly lower unpaid balance, because the RO had determined that petitioner's RCP was $246,762, that RCP was still higher than the unpaid balance at the time of the Offer as well as petitioner's $170,348 Offer. Accordingly, she concluded that it was still correct to reject the Offer on the basis of ability to pay.

On February 13, 2024, the Second AO left a voicemail for the representative about scheduling a conference. On February 28, 2024, having received no response, the Second AO left a message with his secretary. After some rounds of telephone tag, the Second AO was able to speak with the representative on March 1, 2024, and come to an agreement on a time for a supplemental hearing. In that conversation, the Second AO conveyed that petitioner could submit a new OIC, but the representative maintained that the original Offer should be considered.

The Second AO also sent a letter, dated March 1, 2024, memorializing the hearing date and the points she had discussed with the representative. The letter explained that on the basis of the Second AO's preliminary review, the determination that the Offer should be rejected because petitioner could pay his liability in full was correct. It also indicated that because the financial information provided was no longer current, petitioner could submit a new OIC with updated financial information by April 3, 2024.

The Second AO held the supplemental CDP hearing with the representative on March 11, 2024, as scheduled. She explained the results of her review. When the representative sought to explain petitioner's disputes with the ability to pay calculation in the initial CDP hearing, the Second AO explained that, on the basis of the memorandum from respondent's counsel, she did not believe her role was to recalculate the ability to pay using the prior information, but that because the information was no longer current, petitioner could submit a new OIC with new financial information. The representative expressed interest

**[\*8]** in submitting a new OIC but indicated concern about the submission deadline of April 3, 2024, set forth in the Second AO's March 1, 2024, letter. He requested 60 days to submit a new OIC, with which the Second AO agreed, indicating that if she had not received anything by that date, she would issue her determination.

Also on March 11, 2024, after the CDP hearing, the Second AO sent a letter reiterating that petitioner could submit a new OIC, indicating that the representative had requested an additional 60 days to do so, and setting a deadline of May 10, 2024, for the new OIC. The letter indicated that if the Second AO did not receive the required items to consider a new OIC by the deadline, she would promptly send a Supplemental Notice of Determination with her findings.

As of May 15, 2024, the Second AO had received no further communication from petitioner and the representative; accordingly, she closed the case and issued the Supplemental NOD on June 10, 2024.

VI. *Supplemental NOD*

The Supplemental NOD explains that the Second AO had no prior involvement with respect to the specific tax periods and that the Second AO verified that the requirements of any applicable law or administrative procedure were met. Specifically, IRS records confirm the proper issuance of the notice and demand, the Notice of Intent to Levy, and the notice of a right to a CDP hearing. The Supplemental NOD also concludes that an assessment was properly made for each tax and period listed on the CDP notice, notice and demand for payment was mailed to petitioner's last known address, and that there was a balance due when the Notice of Intent to Levy was issued.

The Supplemental NOD explains that a determination was made to sustain the proposed levy action because all legal and procedural requirements had been met. It notes that petitioner's RCP was determined to be $246,763. It further explains that the determination that the Offer should be rejected because petitioner could fully pay his liability was correct. It notes that petitioner was offered an opportunity to submit a new OIC with new financial information, but he did not do so.

VII. *Motion and Response*

In the Motion, respondent states that the Second AO's calculation of petitioner's liability at the time the Offer was submitted correctly

**[\*9]** ignored petitioner's payments made along with the Offer but that it failed to take into account accrued but unassessed interest and additions to tax. Respondent notes that petitioner's liability with these unassessed amounts would be much higher and that the Notice LT11 indicated petitioner's total liability as $329,678 as of August of 2021. Respondent nevertheless argues that the Second AO's mistake was harmless error because petitioner's Offer was less than his RCP.

Petitioner argues that Appeals should have accepted his Offer. Both the Petition and the Response note the delay in the IRS's consideration of his Offer. And the Response further alleges a general pattern of unfair treatment by the IRS, starting with what petitioner says was a suggestion from the IRS in 2018 to cause his business to pay him wages that were then used in the COIC Unit's calculation. Petitioner raises the issue of whether the COIC Unit "wrongfully imputed estimated wages over a period of seventy-seven (77) *weeks*, and wrongfully considered insurance proceeds paid out for a property and casualty loss after the offer was made." (Emphasis added.)[3]

Petitioner argues that the First AO's voicemail, to which his representative did not respond, related only to a "payment plan" and not the Offer. Petitioner also objects to the Second AO's suggestion that he submit a new OIC with new financial information. Although petitioner did not object to respondent's Motion to Remand, the Response indicates that petitioner was deliberately uncooperative in the supplemental CDP hearing, refusing to submit a new OIC because "[g]iven the grist mill that Mr. Palli's first offer was put through, with obvious errors, nothing seemed tenable about that route." The Response concludes: "Mr. Palli looks forward to having an independent judicial review of the errors made in rejecting his offer."

*Discussion*

I.    *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Either party may move for summary judgment regarding all or any part of the legal issues in controversy. Rule 121(a)(1). In the U.S. Court of Appeals for the Eighth Circuit, to which

---

[3] The Response later refers to "seventy-seven (77) pay periods," which is more consistent with the reflection in the administrative record of 77 months, so this Court assumes that the reference to 77 weeks is merely a misstatement.

**[*10]** an appeal of this case would presumptively lie, *see* § 7482(b)(1)(G)(i), review of CDP determinations for abuse of discretion is based on the administrative record, *see Robinette v. Commissioner*, 439 F.3d 455, 461–62 (8th Cir. 2006), *rev'g* 123 T.C. 85 (2004). In cases in which judicial review is based solely on the administrative record, a motion for summary judgment and any response in opposition to a motion for summary judgment must include a statement of facts with references to the administrative record. Rule 121(j). In deciding whether to grant summary judgment, the Court considers factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Respondent argues in the Motion that there is no genuine issue of material fact. The parties have filed a Stipulation as to the Administrative Record, stipulating that the Exhibits thereto constitute the entire administrative record in the case and that the Exhibits are genuine, and petitioner does not dispute that. Nor does petitioner include specific references to the administrative record. Nevertheless, petitioner argues in the Response that there is a dispute of material fact because petitioner disputes the IRS's computation of petitioner's RCP. Although the issue was not raised before the Response stage, petitioner apparently objects to the use of 77 months for computing future income. Petitioner also objects to inclusion of the insurance proceeds in the net equity of assets, as well as to the use of one month of wages as the basis for computing future income, stating that "these are purely factual questions that cannot be resolved on summary judgment." However, petitioner raises no dispute about the underlying facts related to the IRS's computations and evaluations of his Offer. Accordingly, this Court finds, on the basis of the record before it, that this case is appropriate for summary adjudication.

II.    *Standard for Review*

If the underlying tax liability is not at issue, the Court reviews the settlement officer's determination for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). In reviewing for abuse of discretion, the Court does not conduct an independent review of the collection alternatives and does not substitute its judgment for that of the settlement officer; rather, the

**[\*11]** Court's review is limited to determining whether the settlement officer's decision was arbitrary, capricious, or without sound basis in fact or law. *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). If the underlying tax liability was properly at issue in the CDP hearing, the Court reviews the determination de novo. *Lunsford v. Commissioner*, 117 T.C. 183, 185 (2001) (citing *Goza*, 114 T.C. at 181–82).

In a CDP hearing a taxpayer may raise challenges to the existence or amount of an underlying liability only if the taxpayer did not receive a statutory Notice of Deficiency for the tax liability or did not otherwise have an opportunity to dispute it. *See* § 6330(c)(2)(B); Treas. Reg. § 301.6330-1(e)(1). These challenges may include challenges to liabilities the taxpayer reported on a return. Treas. Reg. § 301.6330-1(e)(1). The term "underlying liability" includes any tax deficiency, additions to tax or penalties, and statutory interest. *See Montgomery v. Commissioner*, 122 T.C. 1, 7–8 (2004); *Katz v. Commissioner*, 115 T.C. 329, 338–39 (2000). An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after assessment of the liability unless the opportunity was before the assessment of a tax subject to deficiency procedures. *See* Treas. Reg. § 301.6330-1(e)(3), Q&A-E2; *see also Lewis v. Commissioner*, 128 T.C. 48, 61–62 (2007).

To preserve an underlying tax liability challenge, a taxpayer must properly raise that challenge during the CDP hearing. *See Thompson v. Commissioner*, 140 T.C. 173, 178 (2013); *Giamelli v. Commissioner*, 129 T.C. 107, 113–14 (2007). "An issue is not properly raised if the taxpayer fails . . . to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to [do so]." Treas. Reg. § 301.6330-1(f)(2), Q&A-F3; *see Giamelli*, 129 T.C. at 112–16.

In his July 13, 2022, fax to the First AO, the representative indicated that petitioner was interested in discussing penalty relief if the Offer was rejected. However, he never raised that issue again, to either the First AO or the Second AO or to this Court. Accordingly, this Court reviews Appeals' determination for abuse of discretion. *See Sego*, 114 T.C. at 610; *Goza*, 114 T.C. at 182.

In conducting this review, this Court looks to the reasons offered in the Supplemental NOD. *See Kelby v. Commissioner*, 130 T.C. 79, 86 (2008) ("A corollary to the fact that a taxpayer is entitled to one hearing is that the Commissioner's Appeals Office makes a single determination,

**[\*12]** which may or may not be supplemented. When a case is remanded to Appeals and supplemental determinations are issued, the position of the Commissioner that we review is the position taken in the last supplemental determination."); *see also Hoyle v. Commissioner*, 136 T.C. 463, 467–68 (2011) (holding similarly for CDP hearings under section 6320), *supplementing* 131 T.C. 197 (2008). Although the Court generally "need not consider the Commissioner's position stated in prior notices of determination," *Kelby*, 130 T.C. at 86, the Supplemental NOD does specifically opine that the Initial NOD was correct. Accordingly, this Court also looks to the Initial NOD and other documents in the administrative record related to it, such as the preliminary determination letter from the COIC Unit. *See Serna v. Commissioner*, T.C. Memo. 2022-66, at \*8; *see also Melasky v. Commissioner*, 151 T.C. 93, 106 (2018) ("[W]e will uphold a notice of determination of less than ideal clarity if the basis for the determination may reasonably be discerned . . . ."), *aff'd*, 803 F. App'x 732 (5th Cir. 2020); *Kasper v. Commissioner*, 150 T.C. 8, 24–25 (2018) ("Although we may not accept any *post hoc* rationalizations for agency action provided by the Commissioner's counsel, we may consider any 'contemporaneous explanation of the agency decision' contained in the record." (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 738 (D.C. Cir. 2001))); *cf. Antioco v. Commissioner*, T.C. Memo. 2013-35, at \*25 ("Applying *Chenery* in the CDP context means that we can't uphold a notice of determination on grounds other than those actually relied upon by the Appeals officer." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943))). However, because the initial CDP hearing, as supplemented by the supplemental CDP hearing, is considered a single hearing, errors in the initial hearing can be rendered moot by the supplemental hearing. *Kelby*, 130 T.C. at 86–87.

III.    *Evaluation of Appeals' Determination*

This Court considers whether Appeals (1) properly verified that the requirements of any applicable law or administrative procedure were met; (2) considered any relevant issues petitioner raised; and (3) considered whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of petitioner that any collection action be no more intrusive than necessary. *See* § 6330(c).

**[\*13]**  A.  *Verification*

This Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle*, 131 T.C. at 202–03. This Court concludes, from a review of the record, that Appeals conducted a thorough review of the record and verified that all applicable requirements were met. Accordingly, this Court concludes that there was no abuse of discretion with regard to the verification requirement.

B.  *Issues Petitioner Raised*

1.  *Delay*

Although Appeals will attempt to conduct CDP hearings and issue a Notice of Determination as expeditiously as possible under the circumstances of each situation, there is no prescribed timeline for Appeals' review. *See* Treas. Reg. § 301.6330-1(e)(3), Q&A-E9. Under section 7122(f), an OIC is deemed accepted if not rejected before the date that is 24 months after the date of the submission of the OIC, which does provide an outside limit for review of an OIC. The Court has explained that "[i]n enacting section 7122(f) Congress expressed its expectation that the IRS would respond *fairly* promptly to OICs, rather than letting them sit in a pile for two years or more." *Brown v. Commissioner*, 158 T.C. 187, 197 (2022) (emphasis added), *aff'd*, 116 F.4th 861 (9th Cir. 2024). Short of the two-year limit, the Internal Revenue Manual (IRM) provisions that guide the IRS review of OICs contemplate that, in certain circumstances, OICs may be pending for over a year. *See* IRM 5.15.1.2(5) (Nov. 22, 2021) (advising that new information be obtained if financial information is more than 12 months old).[4] Even though section 7122(f) contemplates review of an OIC for up to two years, only about half a year elapsed between petitioner's submitting the Offer in October of 2021 and the COIC Unit's and the First AO's commencing their consideration of the Offer in April and May of 2022, respectively. Particularly given that petitioner submitted the Offer in October of 2021, when the IRS was still trying to dig its way out of the paper backlog resulting from the slowdown in paper processing caused by the COVID-19 pandemic,[5] this Court cannot conclude that the delay in

---

[4] Citations herein are of provisions of the IRM as in effect during the relevant portion of Appeals' consideration of petitioner's case.

[5] The National Taxpayer Advocate reported that as of the end of 2021, the IRS had yet to process about 5 million pieces of taxpayer correspondence, some of which

**[\*14]** commencing consideration of the Offer was an abuse of discretion. Furthermore, once IRS consideration did commence, it proceeded apace but for pauses to wait for responses from petitioner.

2. *COIC Unit's Computation of Petitioner's Ability to Pay*

Section 7122(a) authorizes the Secretary to compromise an outstanding tax liability. Treasury Regulation § 301.7122-1(b) lays out potential grounds for compromise. Compromise may be based on doubt as to collectibility, *see id.* subpara. (2), which was the basis for petitioner's Offer. Doubt as to collectibility exists in a case in which the taxpayer's assets and income are less than the full amount of the liability. *Id.*; *see also* Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. 517, 517. A determination of doubt as to collectibility includes a determination of ability to pay. Treas. Reg. § 301.7122-1(c)(2).

OICs in CDP cases are to be considered by the COIC Unit pursuant to the normal financial analysis guidelines that apply outside of CDP cases. *See* IRM 5.8.4.15.1(1), (3) (Sept. 24, 2020), 5.8.4.15.2(1) (Sept. 24, 2020). These guidelines prescribe an initial calculation to determine whether the taxpayer can fully pay the liability, based on installment agreement guidelines, taking into account equity in assets and the taxpayer's ability to make payments over the remaining collection period. IRM 5.8.5.2(2) (Sept. 24, 2021); *see also* IRM 5.8.4.3.1(1) (Apr. 30, 2015) (focusing on the same amounts for purposes of the RCP calculation). The ability to pay determination is based on the liabilities (assessed and unassessed) due at the time the taxpayer submitted the OIC and does not take into account payments received during the OIC investigation but does take into account refund offsets and other types of payments. IRM 5.8.5.2(1) and (2). The initial calculation to determine whether a taxpayer can fully pay is to be done after the taxpayer's compliance has been verified and before initial financial analysis. IRM 5.8.5.2(2). Only if the initial calculation indicates the taxpayer cannot fully pay, based on installment agreement guidelines, is the investigation to be continued to determine the taxpayer's RCP. IRM 5.8.5.2(3). According to the installment agreement guidelines, information considered should generally be no older than the prior six months; and if information is older than 12 months and it

dated back to April of that year, concluding: "Paper is the IRS's Kryptonite, and the agency is still buried in it." *See* I.R.S. News Release IR-2022-11 (Jan. 12, 2022), https://www.irs.gov/newsroom/national-taxpayer-advocate-delivers-annual-report-to-congress-focuses-on-taxpayer-impact-of-processing-and-refund-delays.

[*15] appears significant changes have occurred, a request for updated financial information may be appropriate. IRM 5.15.1.2(5).

Petitioner's Offer was submitted in October 2021, so by the time the COIC RO started reviewing it in April 2022, the financial information provided was more than six months old. Accordingly, the COIC RO reached out for additional and updated information, consistent with IRM 5.15.1.2(5). *See also* IRM 5.15.1.7 (Jul. 24, 2019) (indicating that appropriate documentation, including wage statements and bank statements, should be requested to verify financial information provided by a taxpayer); IRM 5.8.5.3.1.4 (Sept. 24, 2021) (providing similarly for purposes of determining "the acceptability of the taxpayer's OIC"). In the absence of evidence indicating it had been spent before the RO's preliminary determination, taking into account cash actually sitting in petitioner's business bank account as of the end of June 2022 as an available asset is consistent with the IRM's instruction to consider cash, liquid assets that can immediately be converted to cash, and assets that can be borrowed against. *See* IRM 5.15.1.3(2) (Aug. 29, 2018); *see also* IRM 5.8.5.7(1), (2), (8) (Sept. 24, 2021) (providing that cash in a taxpayer's personal and business accounts should be taken into account for purposes of an RCP calculation, as should cash paid as a deposit for the OIC).

Likewise, focusing on petitioner's wages for the last month for which they were provided, rather than for the whole year, is consistent with the IRM's instruction to focus on wage statements for the prior three months. *See* IRM 5.15.1.7; *see also* IRM 5.8.5.3.1.4(2) (Sept. 24, 2021) (providing similarly for the RCP calculation); IRM 5.8.5.20(2) (providing that a taxpayer's current income is generally to be used in the analysis of future ability to pay). Although petitioner had previously earned a $10-per-hour wage, it was reasonable to assume that the wage increase to $20 per hour would carry forward, given that it is normal for wages to increase, but not to immediately thereafter halve. Petitioner's request that the RO average his wage income over the year rather than focus on what his current income indicated about his ability to pay was consistent with neither the IRM's guidelines nor with the general purpose of those guidelines to determine the amount that a taxpayer is capable of paying. *See Churchill v. Commissioner*, T.C. Memo. 2011-182, 2011 WL 3300235, at *4 ("An Appeals officer necessarily reviews an offer by looking at a snapshot of a taxpayer's financial situation at the time of the CDP hearing.").

**[\*16]** This Court is not convinced that a June 2018 letter from an IRS examiner was the reason for petitioner's 2022 wage payments from his business. And even if it were, the IRM guidelines require amounts that a taxpayer can obtain with respect to his business to be taken into account. *See* IRM 5.15.1.7(1) (providing that in the case of closely held stock, the company's ledgers and income tax returns should be reviewed to value the company and assign a proportion of the company's value to the taxpayer's stock); IRM 5.8.5.4(2) (Sept. 24, 2021) (providing guidelines for valuing an ongoing business for purposes of the RCP computation). Accordingly, even if petitioner had provided documentation illustrating that his wage income had decreased, which he declined to do, such a decrease might very well have appropriately been offset by consideration of the amount obtainable with respect to the business.

Finally, in his Response petitioner raises a new issue with respect to the period taken into account for computing future income. Petitioner did not raise a concern with the 77-month computation period to the COIC RO or to Appeals. Consistent with the scope of the Court's review in CDP cases, a taxpayer may ask the Court to consider only an issue that was properly raised in the taxpayer's CDP hearing, which is not done if the taxpayer fails to request consideration of the issue by Appeals. *See* Treas. Reg. § 301.6330-1(f)(2), Q&A-F-3. In any event, the 77 months used by the RO was consistent with IRM installment agreement guidance to determine the amount that could be paid by the end of the period of limitations for collection. *See* IRM 5.8.5.2(2).[6] Seventy-seven months after the Offer was submitted in October 2021 would have extended until around March 2028. Because the 2016 tax year liability was assessed in November 2017, the period for collection of that tax would generally have extended until around November 2027. *See* § 6502(a)(1). However, Treasury regulations provide that the period of limitations on collection is suspended while a levy is prohibited because of a pending proposed installment agreement or OIC, rejection of an installment agreement or OIC within the preceding 30 days, or termination of an installment agreement or OIC within the preceding

---

[6] By contrast, the IRM rules for computing a taxpayer's RCP for purposes of an OIC may provide for the period used for computing future income to be based on the number of months over which the OIC would be payable, up to 24 months. *See* IRM 5.8.5.20(1), 5.8.5.25(1) and (2) (Sept. 24, 2021). Although petitioner does not elaborate in his Response, presumably that is the basis for his late-breaking dispute of the 77-month future income computation period.

[*17] 30 days. Treas. Reg. §§ 301.6159-1(g), 301.7122-1(g)(1), (i)(1).[7] Taking into account a suspension of the collection period of approximately 9 months while the Offer was pending would indicate that the 77-month period did not extend past the remaining collection period.[8]

### 3. *Appeals Consideration of Petitioner's Ability to Pay*

Petitioner suggests in his Petition that it was inappropriate for the First AO to issue the Initial NOD on the basis of the file and recommendation provided by the COIC RO. This Court understands the Petition to suggest that petitioner did not have an opportunity to be heard by the First AO because she left a voicemail that indicated only that she would be talking to the representative about an installment agreement and not about the Offer. However, she had indicated at the beginning of the process that the COIC Unit's determination would be only preliminary and that petitioner would have an opportunity to comment on it before Appeals made the final determination. Petitioner did not withdraw his CDP hearing request, despite the representative's indication that he would. Accordingly, the COIC RO also indicated that petitioner could present additional information to the First AO, and the COIC preliminary determination indicated its preliminary status as well. Given that, petitioner was on notice that his failure to communicate with, much less provide information to, the First AO could result in an unfavorable determination.

Petitioner's case was released from the COIC RO to Appeals in August 2022, and the First AO did not issue the Initial NOD until March 2023, with petitioner making no attempt to communicate with her in the intervening seven months. When, after reviewing the COIC Unit file and recommendation, as well as the Initial NOD, the Second AO also concluded that petitioner was able to pay his 2016 liability in full, she gave petitioner an opportunity to submit a new OIC with updated financial information. At petitioner's request, she gave him a full 60 days to do so, even though petitioner had already been on notice for

---

[7] Accordingly, the Form 656 signed and submitted by petitioner provided: "I also understand that the statutory period for collecting my tax debt will be suspended during the time my offer is pending with the IRS, for 30 days after any rejection of my offer by the IRS, and during the time that any rejection of my offer is being considered by the Appeals office."

[8] Furthermore, the potential suspension of the collection period for approximately four months while petitioner's installment agreement was pending and approximately one month after it terminated could have extended it further.

[*18] nearly a month and a half since the case was remanded from this Court that Appeals would be re-examining his case. Nevertheless, the Second AO did not issue the Supplemental NOD for yet another month after the deadline she gave petitioner for a new OIC, more than three months after the case was remanded to Appeals.

Because it included the most recent wage income and available cash information provided to the COIC RO, the ability to pay computation performed by the COIC RO was consistent with the IRM guidelines. Accordingly, Appeals did not abuse its discretion in using that computation on review. *See Thompson*, 140 T.C. at 189 (holding that Appeals did not abuse its discretion in following IRM guidelines in evaluating a collection alternative).

Furthermore, petitioner had the opportunity to submit additional financial information to the First AO. Petitioner chose not to provide additional information that might have affected Appeals' analysis of his Offer, despite being given plenty of time to do so. The Tax Court has repeatedly held that an Appeals officer does not abuse her discretion by rejecting collection alternatives and sustaining the proposed collection action because of the taxpayer's failure to submit financial information requested to consider the collection alternative. *See Orum v. Commissioner*, 123 T.C. 1, 13 (2004), *aff'd*, 412 F.3d 819 (7th Cir. 2005); *see also Scanlon v. Commissioner*, T.C. Memo. 2018-51, at *24 (collecting cases). And it is not an abuse of discretion "to move forward with a determination after receiving no communication from the taxpayer" who has been given sufficient time to respond. *Powell v. Commissioner*, T.C. Memo. 2023-48, at *6. Nor is it an abuse of discretion to reject an OIC without further negotiation. *See Kreit Mech. Assocs. v. Commissioner*, 137 T.C. 123, 135 (2011); *see also Drilling v. Commissioner*, T.C. Memo. 2016-103, at *63. Accordingly, Appeals did not abuse its discretion in determining the amount that petitioner was able to pay using the information provided and moving forward.

4. *Appeals Consideration of Offer*

However, even if Appeals did not err in determining the amount of petitioner's ability to pay, respondent acknowledges that Appeals did err in determining the amount of petitioner's outstanding liability against which his ability to pay was to be compared to determine whether he could fully pay. The $246,763 that it was determined petitioner could pay in 2022 was less than the at least $329,678 liability that he owed in August 2021, shortly before the Offer was submitted,

[*19] which included accrued interest. *See* IRM 5.8.5.2(4) (prescribing "determination of the taxpayer's ability to fully pay the tax liability including any accrued interest and penalties").

However, the IRM provides for the IRS to reject an OIC of less than the taxpayer's RCP. *See* IRM 5.8.4.9 (Sept. 24, 2020) (providing for acceptance of OICs equal to or exceeding a taxpayer's RCP and remedial actions for other OICs). Accordingly, respondent notes, the Court has held that Appeals does not abuse its discretion by rejecting an OIC in such a situation. *See Murphy*, 125 T.C. at 320–21; *see also, e.g., Ragsdale v. Commissioner*, T.C. Memo. 2019-33, at *32–33; *Drilling*, T.C. Memo. 2016-103, at *60; *Alphson*, T.C. Memo. 2016-84, at *8–9; *cf. Ramdas v. Commissioner*, T.C. Memo. 2013-104, at *25 ("An Appeals Officer does not abuse his discretion when he rejects an OIC because the taxpayer's ability to pay is greater than the amount he proposes to pay under the compromise proposal."). Therefore, respondent argues, Appeals' focus on the wrong liability amount was harmless error because petitioner's Offer amount of $177,348 was less than his RCP. *See Perkins v. Commissioner*, 129 T.C. 58, 70–71 (2007) (disregarding an error that could not have affected the outcome of the CDP hearing); *Cohen v. Commissioner*, T.C. Memo. 2013-86, at *16 ("Harmless error does not give rise to an abuse of discretion." (citing *Perkins*, 129 T.C. at 70–71)).

Notwithstanding that the First AO may have, in a telephone call, referred to the $246,763 computed amount as petitioner's RCP and that the Supplemental NOD did so as well, the RO, the First AO, and the Second AO otherwise generally referred to the amount as petitioner's ability to pay. And it seems to this Court that the amount was computed as petitioner's ability to pay and not petitioner's RCP. As petitioner highlights with his argument in the Response, IRM 5.8.5.25(2) states that in the case of an OIC to be paid in five or fewer payments, such as petitioner's Offer, the period for computing future income is 12 months, not the remainder of the collection period. Using the 12-month period and the available monthly income computed by the IRS would have yielded an ability to pay from future income of $12,496, instead of the $80,184 determined by the COIC RO. However, added to the net equity in assets of $166,578 determined by the IRS, petitioner's RCP, according to information he provided, would be $179,074, still greater than his $177,348 Offer.

Moreover, the computation of the net equity in assets determined by the IRS includes amounts actually in petitioner's bank accounts at the time of the computation, and not the amounts paid as a deposit for

[*20] the Offer in October and December of 2021 and January of 2022, as instructed in IRM 5.8.5.7(8). Given that the outstanding liability is to be determined without considering payments made with respect to the Offer, *see* IRM 5.8.5.2(2), similarly treating the taxpayer as still having the cash used to make any such payments for purposes of the RCP computation is consistent with the goal of comparing the outstanding liability to the taxpayer's RCP. Adding the $106,409 of deposits made with respect to the Offer to petitioner's net equity in assets as previously determined would yield an RCP of $285,483. Accordingly, even if the IRS erred in the computation of petitioner's RCP, such an error was harmless, given that the correct RCP still exceeded the Offer amount. Therefore, it was not an abuse of discretion to reject the Offer in accordance with the IRM.

However, even if it had been an abuse of discretion to reject the Offer in 2022, the fact remains that the Second AO considered the Offer in 2024, almost two years after the date of the financial information available to her to evaluate it. And she did so because petitioner refused to provide an updated OIC or financial information despite her request that he do so. As noted, the IRM generally calls for updated financial information if the information available is more than 12 months old and there are changed financial circumstances, *see* IRM 5.15.1.2(5), which petitioner has consistently maintained that there were. And, as also noted, the Court has held that Appeals does not abuse its discretion by rejecting collection alternatives and sustaining a proposed collection action because of the taxpayer's failure to submit financial information requested to consider it. *See Orum*, 123 T.C. at 13; *Scanlon*, T.C. Memo. 2018-51, at *24. Although the Second AO explained in the supplemental CDP hearing that she would not recalculate petitioner's ability to pay or his RCP on the basis of prior information, she indicated that she would consider updated financial information. Given that petitioner chose to squander his opportunity for a fresh look at his case on remand and did not provide the requested financial information to the Second AO, she did not abuse her discretion in rejecting petitioner's request for an OIC and sustaining the levy.

C.    *Balancing Analysis*

Petitioner does not allege that Appeals failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *See* § 6330(c)(3)(C). He thus has conceded this issue. *See* Rules 121(d),

**[\*21]** 331(b)(4); *see also Ansley v. Commissioner*, T.C. Memo. 2019-46, at \*19. In any event, Appeals concluded that the levy balanced the need for efficient tax collection with petitioner's concern about intrusiveness because petitioner provided no viable collection alternative. This Court concludes that there was no abuse of discretion in this determination. *See Atchison v. Commissioner*, T.C. Memo. 2009-8, 2009 WL 89218, at \*4 (concluding that where taxpayers were given an opportunity and time to submit another OIC and they declined to do so, "the Commissioner had no less intrusive means to consider").

## Conclusion

Finding no abuse of discretion, this Court will grant the Motion and sustain Appeals' determination related to the levy to collect petitioner's unpaid liability for the 2016 tax year. This Court has considered all arguments made by the parties and, to the extent they are not addressed herein, deems them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*